UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANNA M. REDDING,

    Plaintiff,

v.                                       Case No:  6:25-cv-891-PGB-NWH

MICHAEL D. LEE; AT&T INC.;
DAREN J. DORMINY; MORAN
KIDD P.A.; JUDGE JAMES
CRANER; AND CHIEF JUDGE
MARGARET SCHREIBER;

    Defendants.

REPORT AND RECOMMENDATION

This matter is before the undersigned pursuant to a sua sponte review of the operative Complaint (Doc. 1) and 28 U.S.C. § 1915(e)(2)(B). For the reasons discussed below, the undersigned respectfully recommends that the Complaint be dismissed with prejudice with respect to the judicial Defendants, and otherwise without prejudice.

I.      BACKGROUND

This case is one of several filed by the Plaintiff arising out of alleged misconduct that she claims occurred in a state court case. Plaintiff was involved in a car accident on May 26, 2021, with Defendant Michael D. Lee. (Doc. 1, ¶¶ 4, 10). Lee was an employee of Defendant AT&T at the time of the accident. (Doc. 1, ¶¶ 5, 10). Plaintiff sued Lee and AT&T on February 23, 2023, in the Ninth Judicial Circuit Court of Florida, in case number 2023-CA-1577-O (the "First State Court Action"). Defendants

1

Daren J. Dorminy, Esq. and the law firm Moran Kidd P.A. represented Lee and AT&T in the First State Court Action. (Doc. 1, ¶¶ 6-7). Defendant Judge James Craner was the presiding Judge in the First State Court Action. (Doc. 1, ¶ 8).

The case was proceeding as normal until January 31, 2024, when Dorminy "attempted to contact Judge Craner" during a deposition. (Doc. 1, ¶ 11). Dorminy filed a motion the next day "improperly referencing his direct contact with Judge Craner." (Doc. 1, ¶ 12). It all went downhill for the Plaintiff from there. Judge Craner "granted 100% of defense motions, denied 100% of Plaintiff's motions, sealed critical filings without hearing, and ultimately dismissed the [First State Court Action] with prejudice" on March 6, 2024. (Doc. 1, ¶¶ 11-13).

The Complaint postulates that the alleged ex parte communication biased Judge Craner against the Plaintiff and that bias alone was responsible for her legal woes. The docket in the case tells a different story.[1] According to a motion for protective order filed by Dorminy in the First State Court Action on February 1, 2024, Plaintiff unliterally walked out of her deposition after an hour and refused to return. Dorminy attempted to call Judge Craner to obtain an emergency ruling but was unable to reach

---

[1] In deciding whether to dismiss a case, a court may judicially notice information about a state case from the state court's database. *See Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013) (taking judicial notice of court documents from a state eviction action at the Federal Rule of Civil Procedure 12(b)(6) stage); *Boyd v. Georgia*, 512 F. App'x 915, 917 (11th Cir. 2013) (finding the district court properly judicially noticed on its own motion the online record of a related state-court criminal proceeding as the basis for dismissing plaintiff's civil rights complaint under *Younger v. Harris*, 401 U.S. 37 (1971)); *Crenshaw v. City of Defuniak Springs*, No. 3:13cv50/MCR/EMT, 2014 WL 667689, at *3 n.1 (N.D. Fla. Feb. 20, 2014) (collecting cases).

him. First State Court Action, Motion for Protective Order, filed February 1, 2024, at 5.[2] Plaintiff did not dispute that she walked out of her deposition, but claimed in response that she was suffering from excruciating pain and was unable to continue. First State Court Action, Response to Motion for Protective Order, filed February 2, 2024, at ¶¶ 7. No mention of any ex parte communication was made in the response to the motion for protective order. *See id.* The court held a hearing on the matter on February 5, 2024, and issued an order granting the motion on February 6, 2024. First State Court Action, Order Granting Defendants' Emergency Motion for Protective Order and Compelling Plaintiff's Attendance at Resumed Deposition, filed February 6, 2024. Judge Craner ordered the Plaintiff to complete her deposition within 14 days but permitted her to sit for 45-minute periods of questioning with 30-minute breaks in between. *Id.* The court also required Plaintiff to reimburse the defense's reasonable attorneys' fees and costs. It does not appear from the record that Plaintiff's deposition was ever completed. Plaintiff's lawyer moved to withdraw as her counsel the next day in light of "irreconcilable differences." First State Court Action, Motion to Withdraw as Counsel for Plaintiff, Anna M. Redding, filed February 7, 2024.

Unhappy with that result, and at that point proceeding *pro se*, Plaintiff sent several letters to the court accusing Judge Craner and Dorminy of bias and filed several motions accusing Defendant Dorminy of misconduct and attempting to vacate the

---

[2] The Deposition Transcript filed on the docket the next day supports this version of the events. *See* Deposition of Anna M. Redding, filed February 2, 2024, at pp. 46-47; *see also* Doc. 1-1 at 3.

3

order of dismissal—all of which were denied by Judge Craner.[3] Plaintiff also appealed the dismissal of the First State Court Action, which was dismissed by the Sixth District Court of Appeal in case number 6D2025-1113.

Undeterred, Plaintiff filed a new case, *pro se*, against Lee, AT&T, Dorminy, and Moran Kidd P.A., in case number 2024-CA-8849-O (the "Second State Court Action").[4] The complaint in that case is based entirely on Dorminy's conduct in the First State Court Action. Second State Court Action, Complaint, filed October 4, 2024. In that complaint, Plaintiff alleges, among other things, that Dorminy was hostile during a deposition, made misrepresentations about her medical condition to the court, and otherwise defamed her. *Id.* The Second State Court Action was originally assigned to Defendant Chief Judge Margaret Schreiber, but was transferred, or as the instant Complaint calls it "redirected," to Judge Craner who "denied it without a hearing." (Doc. 1, ¶¶ 14-15).

The instant Complaint asserts seven counts against the six named Defendants: Count I, "Violation of Civil Rights" pursuant to 42 U.S.C. § 1983; Count II, "Conspiracy to Deprive Civil Rights" pursuant to 42 U.S.C. § 1985; Count III, "Failure to Prevent Civil Rights Violations" pursuant to 42 U.S.C. § 1986; Count IV, "Denial of Access to Courts and Right to Self-Representation" pursuant to 28 U.S.C.

---

[3] These numerous, apparently frivolous, filings prompted Judge Craner on May 6, 2025, to direct the clerk of court not to accept additional filings from the Plaintiff unless filed by an attorney or until otherwise ordered by the Court. First State Court Action, Order Granting AT&T's Motion to Dismiss Plaintiff's Action to Set Aside Judgment.

[4] Plaintiff also sued her lawyer from the First State Court Action, in case number 2024-CA-8852-O. That case is still pending.

4

§ 1654; Count V, "Fraud on the Court"; Count VI, "Judicial Misconduct and Abuse of Process"; and Count VII, "Retaliation and Discrimination Against Disabled Litigant." (Doc. 1).

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each allegation must be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint must state claims in numbered paragraphs, "each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

The United States Supreme Court explained the pleading standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The standard does not require detailed factual allegations but requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Labels, conclusions, formulaic recitations of the elements, and "naked" assertions are insufficient. *Id*. This rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678–79.

Under § 1915(e)(2)(B)(i) & (ii), a court "shall" dismiss an action brought by a plaintiff proceeding *in forma pauperis* if at any time the court determines the action is frivolous, malicious, or fails to state a claim on which relief may be granted. *Id.* "Section 1915[(e)] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for

bringing vexatious suits under Federal Rule of Civil Procedure 11." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). "To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id*. "Examples of the former class are claims against which it is clear that the defendants are immune from suit[.]" *Id*. "Examples of the latter class are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Id*. at 328. "To the extent that a complaint filed *in forma pauperis* which fails to state a claim lacks even an arguable basis in law, Rule 12(b)(6) and § 1915[(e)] both counsel dismissal." *Id*.

### III.  DISCUSSION

#### a.  Judicial Immunity

"Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (citation and internal quotation marks omitted). It is well-established that the doctrine of judicial immunity applies to state court judges. *See Stevens v. Osuna*, 877 F.3d 1293, 1302 (11th Cir. 2017) ("[A]bsolute immunity has been extended to state court judges[.]"); *see also Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985) ("Absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." (citation and internal quotation marks

omitted)); *accord Juravin v. Rada,* No. 5:24-cv-618-PGB-PRL, 2025 WL 1688251, at *6 (M.D. Fla. May 27, 2025), *report and recommendation adopted,* No. 5:24-cv-618-GAP-PRL, 2025 WL 1685796 (M.D. Fla. June 16, 2025).

Whether "an act by a judge is a judicial one relates to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (citation, alteration, and internal quotations marks omitted). Thus, "the relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.'" *Id.* at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)); *see McCullough v. Finley*, 907 F.3d 1324, 1330–31 (11th Cir. 2018) (explaining that courts must examine "the nature and function of [the judge's] act, not the propriety of the act itself"). In the Eleventh Circuit, "[w]hether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley v. Lando,* 437 F.3d 1067, 1070 (11th Cir. 2005). "A judge's motivation is irrelevant to determining whether his act was judicial." *McCullough*, 907 F.3d at 1331.

Further, a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump*, 435 U.S. at 356–57 (citation and internal quotation marks omitted). "Clear

7

absence of all jurisdiction" means a "complete absence of subject matter jurisdiction." *Dykes v. Hosemann*, 776 F.2d 942, 947 (11th Cir. 1985) (en banc). "Even if the complaint otherwise states a claim and the alleged facts are not fantastic, the defendant's absolute immunity justifies dismissal before service of process." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993).

The Complaint names two Florida Circuit Court Judges as Defendants, Judges Craner and Schreiber. All of the allegations against them arise out of conduct that occurred in their judicial capacity in the First and Second State Court Actions. The only factual allegation related to Judge Craner is that he engaged in ex parte communications with Defendant Dorminy in the First State Court Action. (*See* Doc. 1, ¶¶ 11-12). All of the claims in the Complaint flow from this. Ex parte communication with opposing counsel constitutes a judicial act, even if allegedly conspiratorial. *See Dykes*, 776 F.2d at 946; *see also Fake v. City of Phila.*, 704 F. App'x 214, 217 (11th Cir. 2017) (stating that "judicial immunity [would not] be lost even if some of the defendants, as [the plaintiff] suggests, engaged in improper favoritism or ex parte communications"); *Juravin*, 2025 WL 1688251, at *6 (collecting cases).

These ex parte communications, Plaintiff alleges, resulted in "judicial bias against her," the denial of all of her motions, and ultimately the dismissal of the First State Court Action. Specifically, Plaintiff claims that Judge Craner denied her motions "without hearing," dismissed her claims "without due process, denying equal protection of the laws," denied her the "right to self-representation when the court refused to accept *pro se* filings and restricted Plaintiff's ability to file motions or

8

respond," and "granted 100% of defense motions while denying 100% of Plaintiff's motions." (Doc. 1 at 3-6). Nothing is more central to the function of a judge than ruling on motions and dismissing claims. Even if motivated by "judicial bias," these acts are clearly protected by judicial immunity. *See Stump*, 435 U.S. at 356–57.[5]

Judge Craner's order directing the clerk not to accept additional filings from the Plaintiff is also protected by judicial immunity. In Florida, "[c]ourts may, upon a demonstration of egregious abuse of judicial process, restrict parties from filing *pro se* pleadings with the court." *State v. Spencer*, 751 So. 2d 47, 47 (Fla. 1999); *see also Harris v. Gattie*, 263 So. 3d 829, 831 (Fla. 2d DCA 2019) (quoting same); *Martin v. Dist. of Columbia Court of Appeals,* 506 U.S. 1, 3 (1992). The propriety of Judge Craner's decision to restrict Plaintiff's ability to file is irrelevant. It was clearly within his jurisdiction to do so, and as a result, Judge Craner is entitled to judicial immunity.

The only allegation against Judge Schreiber is that she was aware of the "ex parte communications" and "failed to take corrective action" to redress the "judicial bias" when she transferred the Second State Court Action to Judge Craner. However, Ninth Judicial Circuit Administrative Order No. 2024-08-01 specifically provides for the transfer of civil cases between judges when they "might be appropriately

---

[5] Plaintiff cites to two cases for the proposition that ex parte communications "are improper and violate due process rights." (Doc. 1 at 5-6) (citing *State v. Marks*, 758 So. 2d 1131, 1132 (Fla. 4th DCA 2000) and *Jennings v. Dade Cnty.,* 589 So. 2d 1337, 1339 (Fla. 3d DCA 1991)). Both *Marks* and *Jennings*, however, were before the appellate courts on writs of certiorari and are inapposite to this case. Plaintiff also cites *Harris v. Harvey*, 605 F.2d 330, 337 (7th Cir. 1979), for the proposition that judicial misconduct is not subject to immunity. The acts at issue in that case are materially different and "involved the defendant's repeated communications to the press and to city officials over the course of more than a year[which] were critical of plaintiff and called for action to be taken against him." *Id.*

9

considered or tried together." *Id.* Judge Schreiber's act of transferring to Judge Craner the Second State Court Action, which arose out of the First State Court Action, is well within the scope of her judicial authority.

In light of the above, the undersigned respectfully recommends that Plaintiff's claims against Judge Craner and Judge Schreiber be dismissed with prejudice as they are entitled to judicial immunity with regard to all claims alleged in the Complaint.

### b. Shotgun Pleadings

The Complaint is also replete with conclusory allegations of "fraud" and "conspiracy," and it lumps every Defendant into each claim without specifying which Defendant is responsible for which act. (*See* Doc. 1) Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 10(b) requires a party to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." "The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'" *Beckwith v. Bellsouth Telecomms. Inc.,* 146 F. App'x 368, 371 (11th Cir. 2005).[6]

The Eleventh Circuit has defined four types of shotgun pleadings. "The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to

---

[6] The Court appreciates that unpublished Eleventh Circuit opinions constitute persuasive, and not binding, authority.

carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). The second most common type "is a complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id*. at 1322. "The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id*. at 1322–23. "Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id*. at 1323. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

At a minimum, the Complaint in this case falls into the second and fourth categories. It cites to eleven different statutes and is replete with conclusory claims about "fraud on the court," denial of due process, and judicial bias, but lacks specific facts to justify such claims. A complaint must do more than baldly assert that constitutional rights were violated. *Iqbal*, 556 U.S. at 678. It also fails to specify which Defendant is responsible for Plaintiff's alleged harm. Notably, Defendants Lee, Dorminy, and AT&T are not specifically named in any of the Counts. There are no allegations, for example, regarding what role Defendant Lee or AT&T played in the alleged ex parte communications conspiracy or resulting judicial bias. For these

11

reasons, the undersigned respectfully recommends that the Complaint be dismissed without prejudice.

### c. Litigation Privilege

Defendants Michael Lee, AT&T, Daren J. Dorminy, Esq. and the law firm Moran Kidd P.A.'s only relation to this case appears to be based on acts taken in the First State Court Action. As such, Plaintiff's claims against those Defendants are likely protected by the litigation privilege. The litigation privilege "provides all persons involved in judicial proceedings, including parties and counsel, an absolute privilege from civil liability for acts taken in relation to those proceedings." *North Star Cap. Acquisitions, LLC v. Krig*, 611 F. Supp. 2d 1324, 1329 (M.D. Fla. 2009) (citing *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.,* 639 So. 2d 606, 608 (Fla. 1994)). Not every event bearing any relation to litigation is protected by the privilege, however, because "if the litigation privilege applied to all actions preliminary to or during judicial proceedings, an abuse of process claim would never exist, nor would a claim for malicious prosecution." *Id.* (citation, alteration, and internal quotation marks omitted).

All of the allegations against Defendants Lee, AT&T, Dorminy and Moran Kidd P.A. involve actions taken in the First State Court Case. As such, the undersigned is skeptical about Plaintiff's ability to plead any claim against those Defendants in good faith. Nevertheless, because this is Plaintiff's first Complaint, the undersigned recommends providing her with at least one more opportunity to state a viable claim.

12

### d. Civil Rights Claims

The Complaint cites to 42 U.S.C. §§ 1983, 1985, and 1986 as statutory bases for Plaintiff's claims that Defendants violated her constitutional rights. Under 42 U.S.C. § 1983, a plaintiff must plausibly allege (1) that an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States and (2) that the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). The only § 1983 claim is asserted against Judge Craner, who is immune from suit, as noted above.

The purpose of 42 U.S.C. § 1985 "was to stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law." *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002); *see Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68, 274 (1993). Unlike § 1983, which requires action under the color of law, § 1985 applies to private acts, but § 1985 reaches only private acts that interfere with certain protected constitutional rights. *Id.* Significantly, however, "as long as an attorney's conduct falls within the scope of the representation of his client," his conduct "is immune from an allegation of a § 1985 conspiracy." *Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003).

Relatedly, under § 1986, the plaintiff must allege that a person had knowledge of a conspiracy in violation of § 1985 and, despite having the power to prevent or aid in preventing the violation, neglected or refused to do so. 42 U.S.C. § 1986; *Park v. City of Atlanta,* 120 F.3d 1157, 1159 (11th Cir. 1997). Therefore, where there is no underlying conspiracy to support a § 1985 claim, the derivative § 1986 claim must also

fail. *Cox v. Mills*, 465 F. App'x 885, 887–88 (11th Cir. 2012) (citing *Farese*, 342 F.3d at 1232 n.12; *Park*, 120 F.3d at 1159–60).

Among other pleading deficiencies, the Complaint lacks sufficient allegations that an actual conspiracy existed sufficient to state a claim under § 1985 or § 1986. *See, e.g., Geidel v. City of Bradenton Beach,* 56 F. Supp. 2d 1359, 1365 (M.D. Fla. 1999) ("[T]he mere allegation that an agreement existed between Defendants is insufficient to put the [defendant] on fair notice of the grounds supporting the claim." (citing *Dolin v. West,* 22 F. Supp. 2d 1343, 1350 (M.D. Fla. 1998) ("[T]he plaintiff must plead [a] § 1983 conspiracy claim with particularity, and simply claiming a conspiracy is not enough."))).

### e. Leave to Amend

Leave to amend is generally freely given, but a district court may deny leave to amend where amendment would be futile. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004). Amendment is futile, for example, where "the amended complaint would not survive a motion to dismiss." *Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011). In general, a *pro se* party should be given one opportunity to file an amended complaint that states a claim within this Court's subject matter jurisdiction. *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (per curiam). The Eleventh Circuit favors allowing *pro se* litigants ample opportunity to correct pleading defects. *See Doscher v. Holding*, No. 22-13184, 2023 WL 6060559, at *3 (11th Cir. Sept. 18, 2023) (unpublished) (stating that, when a court dismisses a

complaint on shotgun pleading grounds, "the district court must allow the litigant at least one chance to remedy the deficiency before dismissing the case with prejudice.").

The undersigned advises Plaintiff that any amended complaint should be a short and plain statement of the facts establishing each cause of action in compliance with Federal Rules of Civil Procedure 8 and 10, as discussed above. *Pro se* litigants are subject to the same law and rules of court as litigants who are represented by counsel, including the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Middle District of Florida. Before filing an amended complaint, Plaintiff should consider the resources available to *pro se* litigants, including the Orlando Division's Legal Information Program and the Middle District of Florida's Guide for Proceeding Without a Lawyer. The Local Rules and these resources are available on the Court's website: www.flmd.uscourts.gov.

## IV.  CONCLUSION

Because this is Plaintiff's first dismissal, I respectfully recommend that the Court dismiss the Complaint without prejudice as to all non-judicial Defendants, and permit Plaintiff an additional opportunity to amend within a timeframe established by the Court, provided Plaintiff has a good faith basis to do so. However, because Plaintiff's claims against Defendant Judges James Craner and Margaret Schreiber are rendered futile by judicial immunity, I respectfully recommend that those claims be dismissed with prejudice.

## NOTICE TO PARTIES

The party has **fourteen days** from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

**RECOMMENDED** in Orlando, Florida on August 21, 2025.

_____
NATHAN W. HILL
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties
Presiding District Judge